## Hanson v. Smith
*[Cite as 2 AOA 592]*

*Case No. 89AP-610*
*Franklin County, (10th)*
*Decided April 19, 1990*

R.C. 2963.03
R.C. 2963.07
R.C. 2963.09

*Mr. James Kura, Franklin County Public Defender, and Mr. John W., Keeling, for appellant.*

*Mr. Michael Miller, Prosecuting Attorney, Mr. Daniel N. Abraham and Mr. Mark E. Linder, for appellee.*

BOWMAN, J.

On January 30, 1989, petitioner-appellant, Melvin Eugene Hanson (a.k.a. Wolfgang Eugene Von Snowden), was arrested in Forth Worth, Tarrant County, Texas, on a felony charge that had been filed in Franklin County, Ohio, and transported to the Franklin County jail after waiving extradition proceedings in Texas.

On April 5, 1989, the Governor of California formally requested of the Governor of Ohio, the arrest and extradition of Melvin Eugene Hanson (a.k.a. Wolfgang Eugene Von Snowden), as a fugitive from justice, who was charged in Los Angeles County, California, with "conspiracy to commit a crime and to cheat and defraud, murder, false and fraudulent insurance claim, grand theft of personal property, assault with a stun gun with special allegations." The request included the application for extradition, the felony complaint and a warrant for arrest accompanied by a sworn affidavit. The Governor of California certified the authenticity of the documents.

The Governor of Ohio issued a warrant of arrest for appellant on April 18, 1989, which provided for the appellant to be brought before a judge of a court of record in Ohio for extradition proceedings. On May 1, 1989, the appellant filed a petition for writ of habeas corpus, pursuant to R.C. 2963.09, alleging he was not the individual named in the extradition request, he was not a fugitive and the extradition documents were not valid. On May 11, 1989, appellant filed a motion to suppress evidence obtained as a result of an alleged illegal arrest in Texas. Appellant did not present or proffer any evidence to support his attack on the validity of the extradition documents or the motion to suppress. Specifically, appellant sought to suppress an identification photo taken following his arrest in Texas on the Ohio warrant.

The court made a finding that the extradition documents were in order on their face and, therefore, denied appellant's petition for a writ of habeas corpus. The court also found no reason to believe the arrest in Texas was improper and refused to hear appellant's motion to suppress evidence.

Appellant asserts the following assignments of error:

"I. THE TRIAL COURT ERRED BY CONCLUDING THAT THE PETITIONER WAS THE PERSON NAMED IN THE REQUEST FOR EXTRADITION WHEN THE GOVERNOR'S WARRANT WAS FACIALLY DEFECTIVE AND THE RESPONDENT FAILED TO PRESENT SUFFICIENT EVIDENCE WITH RESPECT TO IDENTITY.

"II. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER A HEARING ON HIS MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL ARREST."

The authority of a governor of a state to issue a warrant of extradition derives from Clause 2, Section 2, Article IV of the United States Constitution:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Congress implemented such provisions which are presently found at Sections 3182, 3194 and 3195, Title 18, U.S. Code. R.C. Section 2963.01, *et seq.*, the Ohio Uniform Criminal Extradition Act, sets forth the requirements for a demand of extradition to be recognized by the Governor of Ohio in R.C. 2963.03:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless the demand is in writing alleging, except in cases arising under section 2963.06 of the Revised Code, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and unless the demand is accompanied by:

"(A) A copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon;

"(B) A copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state. The copy of indictment, information, affidavit, judgment of conviction, or sentence must be authenticated by the executive authority making the demand."

The Governor of Ohio then has the discretion to decide whether to comply with the demand for extradition under R.C. 2963.07, which provides in pertinent part:

"If the governor decides that a demand for extradition should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal and be directed to any peace officer or other person whom the governor finds fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance."

The Supreme Court of Ohio has acknowledged that "[a] proceeding in habeas corpus brought in an asylum state by a fugitive from justice arrested on a warrant of extradition is a summary proceeding and very limited in scope." *Carpenter* v. *Jamerson* (1982), 69 Ohio St. 2d 308, paragraph one of the syllabus. A habeas corpus proceeding is "*** limited to consideration of whether the petitioner is lawfully detained and whether the requirements of extradition have been met. ***" *Rodriquez* v. *Sandoval* (Colo. 1984), 680 P. 2d 1278, at 1280.

The United States Supreme Court delineated the general standard for review of a petition for habeas corpus in *Michigan* v. *Doran* (1978), 439 U.S. 282, at 289:

"*** A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Cf. *Bassing* v. *Cady*, 208 U.S. 386, 392 (1908). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

Appellant's first assignment of error raises the issue of whether the extradition documents on their face are in order.

Appellant asserts that the Governor of Ohio's warrant was facially defective because it did not "*** substantially recite the facts necessary to the validity of its issuance." R.C. 2963.07.

An asylum state's governor's rendition warrant is, in itself, prima facie evidence that all constitutional and statutory requirements have been met. *Doran, supra; In re Rowe* (1981), 67 Ohio St. 2d 115. The burden is on the appellant to rebut the presumption by proof beyond a reasonable doubt. *Rowe, supra*, paragraph three of the syllabus. Appellant concedes that when regular and sufficient upon its face, a rendition warrant is considered to be prima facie evidence of the existence of every fact which the governor is obliged to determine before issuing the warrant. *Hyatt* v. *New York* (1903), 188 U.S. 691. Therefore, absent a showing to the contrary, when a governor issues

a warrant for extradition, it will be presumed that he acts regularly. *In re Schrameck* (1959), 110 Ohio App. 107, at 108.

R.C. 2963.07 gives the governor discretionary powers to decide whether to comply with a demand for extradition. Contrary to appellant's assertion, the language of R.C. 2963.07 was not intended to require the governor of an asylum state to include in his warrant a verbatim recitation of all the items required in R.C. 2963.03. "*** The governor's warrant merely implements extradition proceedings based upon the requisition documents of the demanding state. ***" *Rodriquez, supra*, at 1281, citing *Self* v. *People* (1956), 133 Colo. 524, 297 P. 2d 887. The warrant does not need to be technically correct in every respect. *Rodriquez*, at 1281. The Governor of Ohio's warrant in question does substantially recite the facts necessary to the validity of its issuance as required by R.C. 2963.07.

The warrant of arrest issued by the Governor of Ohio recites that a requisition has been made upon the governor to issue a warrant for the arrest and rendition of Melvin Eugene Hanson, alleged fugitive from justice, who stands charged in California with multiple crimes. Although the warrant does not specifically state that California had indicated that the appellant was present in California at the time of the crimes, the requisition documents from California do so. Therefore, it may be reasonably inferred from the Governor of Ohio's warrant that he properly considered this fact. Appellant did not submit any evidence to show the governor's warrant was invalid on its face and the appellant has failed to rebut its prima facie presumption of validity.

Appellant also asserts that the rendition package forwarded from the Governor of California to the Governor of Ohio failed to meet the standards of R.C. 2963.03. In order to meet the requirements of R.C. 2963.03, a demand for extradition must be accompanied by one of four alternative documents: a copy of an indictment; or a copy of an information supported by an affidavit; or a copy of an affidavit made before a magistrate, together with a copy of a warrant; or a copy of a judgment of conviction or a sentence.

The rendition package sent to the Governor of Ohio by the Governor of California included a demand in writing charging the alleged fugitive from justice with multiple crimes committed while present in the state of California. The demand is accompanied by a felony complaint warrant supported by an affidavit signed on February 3, 1989, along with a second affidavit dated March 21, 1989. Both affidavits charge Melvin Eugene Hanson with having committed multiple crimes in the state of California and are authenticated by a judge or magistrate. Therefore, the rendition package forwarded from the Governor of California met the requirements of R.C. 2963.03. Although appellant argues in the trial court that he was not a fugitive from justice, he does not present that argument here.

Finally, appellant argues that he is not the person named in the request for extradition. Specifically, appellant contends that the photographs contained in the request were not properly authenticated or identified. Courts have held that pictures attached to the affidavit of an agent of the demanding state are sufficiently authenticated for use in extradition proceedings. *Raftery ex rel. Huie Fong*, v. *Bligh* (C.A.1, 1932), 55 f. 2d 189; *People ex rel. Guidotti*, v. *Bell* (1939), 372 Ill. 572, 25 N.E. 2d 45. The affidavit of Jon Perkins contained in the request for extradition specifically states:

"*** I am the investigating officer in the herein criminal matter against the said defendant MELVIN EUGENE HANSON, the individual depicted in the photograph attached to this affidavit as Exhibit I."

The affidavit further states:

"*** [A] Glendale Police Department Detective received a call from Shelly Navarre of Farmers Insurance. Ms. Navarre related to the officer that her company had issued a $500,000 life insurance policy on the life of Melvin Eugene Hanson and she was inquiring if the picture taken of the decedent at the doctor's office was compared with a pre-existing picture of the defendant. Officers discovered that no comparison was ever made. On said date, officers requested a soundex of defendant Hanson's California driver's license and compared that photograph to the photograph taken of said body on April 16, 1988 in Doctor Bogg's office. ***

"***

"Further investigation revealed that numerous individuals had seen the defendant, Melvin Eugene Hanson, after decedent's death on April 16, 1988. Furthermore, individuals identified the defendant as the individual in the said driver's license ***."

Reading the affidavit in its entirety, it is clear that the individual referred to and

pictured in the driver's license and Melvin Eugene Hanson are the same individual. This created a prima facie showing of identity that the individual shown on the California driver's license, attached to Perkins' affidavit, is Melvin Eugene Hanson. *Id.* The affidavit also states, in paragraph three, that the person depicted in the photographs attached to the affidavit in Exhibit I is the person investigated in the criminal matter and named in the requisition papers.

The court, in *Self, supra,* held the defendant had been sufficiently identified in the habeas corpus proceeding by the trial court's personal observation of the defendant and a photograph of the defendant identified by an affidavit. Here, the transcript of the trial court proceedings clearly indicates the trial court compared the photos attached to the affidavit, including the California driver's license photograph, to the defendant seated in the courtroom and determined that that was one in the same person.

Appellant did not present or proffer any evidence to rebut the presumption the extradition documents were valid and that he is not the individual sought by the state of California but, rather, appellant filed a motion to suppress in an attempt to shift the burden of proof to the state. Appellant asserts the trial court erred when it refused to grant appellant a hearing on his motion to suppress the identification photographs obtained as a result of an alleged unlawful arrest in Texas on a felony charge filed in Ohio. Appellant did not contest the extradition from Texas to Ohio.

Courts have frequently emphasized the limited scope of extradition hearings. The United States Supreme Court stated, in *Michigan, supra,* at 288:

"Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, §2, cl. 2, of the Constitution. *** The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial."

*Carpenter, supra,* at 311, noted that the applicable statutes and case law do not provide for a burdensome hearing in the asylum state. In addition, in *Commonwealth* v. *Kulp* (1973), 225 Pa. Super. 345, 310 A. 2d 399, at 400, the court noted prevailing case law:

"Given the summary nature of interstate rendition proceedings, an accused is not entitled to receive the full panoply of procedural protections normally accorded to a defendant in a criminal trial. ***"

Since the innocence or guilt of the accused is not an issue in an extradition proceeding, courts have declined to extend the protection of the exclusionary rule to such proceedings. See *Holland* v. *Hargar* (1980), 274 Ind. 156, 409 N.E. 2d 604 (photograph and fingerprints admissible, although arrest alleged to be in violation of Fourth Amendment); *Cobb* v. *Gilman* (1979), 271 Ind. 223, 391 N.E. 2d 618 (statement admissible even though *Miranda* warning not given); *Martin* v. *Maryland* (C.A.D.C. 1972), 287 A. 2d 823. (Suppression hearing not required on issue of illegality of arrest in asylum state.)

Therefore, assuming, *arguendo,* the photograph was taken following an illegal arrest in Texas, it still may be introduced at the extradition hearing as proof of identity. *Kulp, supra.*

The proper forum to challenge the admissibility of evidence due to an alleged constitutional violation has been held to be in the courts of the demanding state prior to the defendant's trial. "*** Courts in asylum states will not consider issues which are best raised at trial. ***" *Kulp, supra,* at 400. Therefore, the trial court did not err when it refused to grant appellant a hearing on his motion to suppress evidence obtained as a result of an unlawful arrest as that issue was beyond the scope of the habeas corpus proceeding.

For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and MAHONEY, J., concur.

MAHONEY, J., retired of the Ninth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.